UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RALPH R. JERRY,                          :
        Plaintiff,                       :
                                         :    Case No. 3:05cv1315 (JBA)
v.                                       :
                                         :
COMMISSIONER OF SOCIAL SECURITY,         :
        Defendant.                       :

## RULING ON OBJECTIONS TO RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND ON DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER [DOC. #20]

Magistrate Judge Margolis, to whom this case was referred [Doc. #9], issued her Recommended Ruling [Doc. #20] on September 8, 2006, denying plaintiff's Motion for Judgment on the Pleadings [Doc. #15] and granting defendant's Motion to Affirm the Decision of the Commissioner [Doc. #17]. Plaintiff's Objections [Doc. #21] were submitted September 12, 2006, and Defendant's Response was filed on September 26, 2006 [Doc. #22]. For the reasons below, the Court ADOPTS the Recommended Ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court presumes familiarity with the Magistrate Judge's Recommended Ruling [Doc. #20], dated September 8, 2006, wherein the administrative and factual background is comprehensively laid out. Plaintiff Ralph R. Jerry is a 53-year-old man residing in Bridgeport, Connecticut. (See Cert. Tr. of Admin. Procdgs. ("Tr.") at 17, 60; Compl. [Doc. #3-1] at 1.) Married twice, plaintiff is now divorced or separated and has two children.

1

(<u>See</u> Tr. at 172, 200, 250.)  His relevant health history stretches back to 1972, when after graduating from high school, plaintiff served in the military and was stationed in Germany. (<u>See</u> <u>id.</u> at 171, 200.)  During that time, he claims that he was falsely accused of and ordered detained for the rape and sodomy of a German woman, on which charges he was later acquitted.  (<u>See</u> <u>id.</u> at 215.)  According to plaintiff, this traumatic incident drove him into depression and substance abuse, which has afflicted him for many years.  (<u>See</u> <u>id.</u> at 166.)  In 1980, back in the U.S., he briefly received inpatient treatment for alcohol abuse. (<u>See</u> <u>id.</u> at 172.)

From approximately 1980 or 1982 to 1993, plaintiff served a sentence for rape and burglary charges, to which he pled no contest.  (<u>See</u> <u>id.</u> at 161, 166.)  He was again incarcerated from 1999 to May 2003, after pleading no contest to burglary and assault (<u>id.</u>) or breaking and entering charges (<u>id.</u> at 253). Plaintiff most recently worked as a limousine chauffeur from 1994 until 1996, when he injured his kidney and lumbar spine in a car accident and received Workers' Compensation for one year (<u>see</u> <u>id.</u> at 200-01).

After his release from prison in 2003, Mr. Jerry sought mental health treatment for depressive symptoms at the Veterans Administration Medical Center ("VA").  (<u>See</u> <u>id.</u> at 171-74.)  This began a long course of examinations and treatments by nurses,

2

doctors, and other VA staff.  Over a documented period of nearly two years, plaintiff was repeatedly treated and prescribed medication for a variety of conditions, including depression, substance abuse, benign prostatic hypertrophy, and nocturia.  Mr. Jerry was seen with some regularity by Nurse Ann Fowler (see, e.g., id. at 113, 135-36, 153-54, 166-67, 183-84) and Nurse Practitioner Deborah W. Miles (see, e.g., id. at 133-34, 143-45, 160-64).

Plaintiff initially applied for Supplemental Security Income benefits ("SSI") on October 6, 2003 (see id. at 26-28, 60-62), which application was denied on November 15, 2003 (see id. at 26-28).  On November 25, 2003, Jerry filed a request for reconsideration with the Social Security Administration ("SSA") (see Tr. at 26-28), and on December 24, 2003, Dr. Wilbur J. Nelson reviewed plaintiff's file and completed a Psychiatric Review Technique form (see id. at 116-30).  The Commissioner affirmed denial of plaintiff's benefits on January 2, 2004 (see id. at 31-33).  Plaintiff then filed a request, on February 25, 2004, for a hearing before an Administrative Law Judge ("ALJ") (see id. at 34-35, 84-88).  On July 19, 2004, ALJ Liberman held a hearing on plaintiff's case, at which plaintiff testified (see id. at 36-46, 246-68), and subsequently held on January 31, 2005 a supplemental hearing that included the expert testimony of Dr. Fuess, a clinical psychologist, and Ronald Freedman, a vocational

3

expert (see id. at 269-92).  Ultimately, the ALJ concluded in a
March 8, 2005 decision that plaintiff was "not disabled" and
therefore not entitled to receive SSI.  (See id. at 13-23.)
Plaintiff unsuccessfully appealed the ALJ's decision on March 31,
2005 (see id. at 9-12), and the Appeals Council affirmed the
ALJ's decision on June 7, 2005 (see id. at 5-7).

On August 18, 2005, plaintiff filed the pending action pro
se — he is now represented by counsel — seeking to reverse the
Commissioner's decision [Doc. #3], to which defendant filed her
Answer on November 8, 2005 [Doc. #7].  This case was referred to
Magistrate Judge Margolis on December 16, 2005 [Doc. #9], who
issued her Recommended Ruling [Doc. #20] on Plaintiff's April 10,
2006 Motion for Judgment on the Pleadings [Doc. #15] and on
Defendant's May 11, 2006 Motion to Affirm the Decision of the
Commissioner [Doc. #17], denying the former and granting the
latter.  In her review of the ALJ's decision, Magistrate Judge
Margolis found that ALJ Liberman correctly applied the
sequential, five-step process set out in 20 C.F.R. § 404.1520,[1]

---

[1] The statute provides:

 § 404.1520 Evaluation of disability in general.

. . . .
(4) The five-step sequential evaluation process. The
sequential evaluation process is a series of five
"steps" that we follow in a set order. . . .

(i) At the first step, we consider your work activity,
if any. If you are doing substantial gainful activity,

4

and made his determination based on substantial evidence, as
required by <u>Balsamo v. Chater</u>, 142 F.3d 75 (2d Cir. 1998).  <u>See</u>
Rec. Ruling at 22.  The ALJ went through the five steps required
by 20 C.F.R. § 404.1520, finding: (1) plaintiff was not engaged
in "substantial gainful activity"; (2) plaintiff did suffer from
"severe" depression and substance abuse, but (3) his condition
did not "meet or medically equal . . . one of the impairments
listed in Appendix 1, Subpart P, Regulations No. 4," <u>see</u> <u>infra</u>

---

we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical
severity of your impairment(s). If you do not have a
severe medically determinable physical or mental
impairment that meets the duration requirement in §
404.1509, or a combination of impairments that is
severe and meets the duration requirement, we will find
that you are not disabled. . . .

(iii) At the third step, we also consider the medical
severity of your impairment(s). If you have an
impairment(s) that meets or equals one of our listings
in appendix 1 of this subpart and meets the duration
requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of
your residual functional capacity and your past
relevant work. If you can still do your past relevant
work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our
assessment of your residual functional capacity and
your age, education, and work experience to see if you
can make an adjustment to other work. If you can make
an adjustment to other work, we will find that you are
not disabled. If you cannot make an adjustment to other
work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520.

note 2 (Tr. at 20); plaintiff's "past relevant work as a
limousine driver was semi-skilled and required interaction with
the public and is thus precluded by his residual functional
capacity" (id. at 21); and (5) in view of plaintiff's
characteristics, "he is capable of making a successful adjustment
to work that exists in significant numbers in the national
economy" (id. at 22).  Thus, the ALJ found Mr. Jerry to be "not
disabled."

Ruling on plaintiff's and defendant's motions, the
Magistrate Judge concluded that: (1) the ALJ incorrectly
concluded that the requirements of section 12.04(A) were not
supported by substantial evidence of plaintiff's "severe"
depression, but had substantial evidence to support the
conclusion that plaintiff did not suffer at least two of the four
limitations of Rule 12.04(B), see 20 C.F.R. 404, Subpt. P, App.
1, § 12.04; (2) ALJ Liberman had before him a medical record
constituting substantial evidence on which to base his decision
as to plaintiff's claim of disability and therefore did not err
in failing to seek additional information, see Perez v. Chater,
77 F.2d 41, 48 (2d Cir. 1996); (3) testimony of the vocational
expert, Mr. Freedman, was responsive to a hypothetical question
posed to him by the ALJ, which was not flawed; and (4) ALJ
Liberman's conclusion that plaintiff's testimony was not fully

credible was supported by substantial evidence and stated with
sufficient specificity.

**II. STANDARDS**

### A. Review of a Magistrate Judge's Recommended Ruling

This Court, pursuant to Local Rule 72.2(b) and Federal Rule
of Civil Procedure 72(b), reviews <u>de novo</u> the portions of the
Magistrate Judge's decision objected to by the plaintiff and may
adopt, reject, or modify any part or the entirety of the
recommended ruling.  <u>See</u> 28 U.S.C. § 636(b)(1).

### B. Review of an SSI Disability Determination

The Court may "set aside the ALJ's decision only where it is
based upon legal error or is not supported by substantial
evidence," <u>Balsamo</u>, 142 F.3d at 79 (citation omitted).  "The
substantial evidence rule also applies to inferences and
conclusions that are drawn from findings of fact."  <u>Gonzalez v.
Apfel</u>, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citing <u>Rodriquez
v. Califano</u>, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).  In
reviewing the disability determination, the Court focuses on the
ALJ's written decision, <u>see Rodriguez v. Barnhart</u>, 163 Fed. Appx.
15, 16 (2d Cir. 2005), and "[w]here an administrative decision
rests on adequate findings sustained by evidence having rational
probative force, the court should not substitute its judgment for
that of the Commissioner," <u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d

Cir. 1998) (citing <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988)).

## III. DISCUSSION

Plaintiff objects to Judge Margolis's ruling on four grounds: (1) insufficiency of evidence to support the finding that plaintiff is not "disabled" under section 12.04 (20 C.F.R. 404, Subpt. P, App. 1, § 12.04), (2) improper evaluation of the treating sources, (3) flawed vocational expert testimony, and (4) improper evaluation of plaintiff's credibility. (<u>See</u> Pl. Objections.)  Defendant responds by pointing to facts in the record claimed to constitute sufficient evidence as to each of the conclusions objected to. (<u>See</u> Def. Response.)

### A. Plaintiff's First Objection: Sufficiency of the Medical Evidence

According to plaintiff, Judge Margolis improperly affirmed the ALJ's decision based on his review of the medical record by Drs. Cohen and Fuess, finding that plaintiff's social functioning and cognitive abilities were only moderately, and not markedly, limited, and that plaintiff was therefore not "disabled." (<u>See</u> Pl. Objections [Doc. #21] at 2-3.)  Plaintiff also criticizes the Magistrate Judge's reliance on plaintiff's Global Assessment of Functioning ("GAF") scores and on the reports of Drs. Hanson and Nelson, "two non-examining physicians." (<u>Id.</u>)

As analyzed in the ALJ's decision and the Recommended Ruling, plaintiff claims <u>per se</u> disability under the "affective

8

disorder" designation of section 12.04 (20 C.F.R. 404, Subpt. P,

App. 1, § 12.04).[2]  Plaintiff asserted in his motion that his

_____

[2] This section reads in relevant part:

    12.04 Affective Disorders: Characterized by a
disturbance of mood, accompanied by a full or partial
manic or depressive syndrome. Mood refers to a
prolonged emotion that colors the whole psychic life;
it generally involves either depression or elation.
    The required level of severity for these disorders
is met when the requirements in both A and B are
satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous
or intermittent, of one of the following:
    1. Depressive syndrome characterized by at
    least four of the following:
        a. Anhedonia or pervasive loss of
        interest in almost all activites;
        or
        b. Appetite disturbance with change
        in weight; or
        c. Sleep disturbance; or
        d. Psychomotor agitation or retardation; or
        e. Decreased energy; or
        f. Feelings of guilt or worthlessness; or
        g. Difficulty concentrating or thinking; or
        h. Thoughts of suicide; or
        i. Hallucinations, delusions, or paranoid
        thinking; or
    2. Manic syndrome characterized by at least three
    of the following:
        a. Hyperactivity; or
        b. Pressure of speech; or
        c. Flight of ideas; or
        d. Inflated self-esteem; or
        e. Decreased need for sleep; or
        f. Easy distractability; or
        g. Involvement in activities that have a high
        probability of painful consequences which are
        not recognized; or
        h. Hallucinations, delusions or paranoid
        thinking; or

        3. Bipolar syndrome with a history of

9

symptoms meet the requirements of both Parts A and B, such that
he should be deemed "disabled" on the basis of affective
disorder.  The ALJ had found "[m]any of the requirements of Part
A . . . absent and . . . no indication of marked limitations for
any of the 'B' criteria" (Tr. at 20); Judge Margolis disagreed
with ALJ Liberman's conclusion as to Part A, but not as to Part
B.[3]

----

> episodic periods manifested by the full
> symptomatic picture of both manic and
> depressive syndromes (and currently
> characterized by either or both syndromes);
> AND
> B. Resulting in at least two of the following:
>      1. Marked restriction of activities of daily
>      living; or
>      2. Marked difficulties in maintaining social
>      functioning; or
>      3. Marked difficulties in maintaining
>      concentration, persistence, or pace; or
>      4. Repeated episodes of decompensation,
>      each of extended duration;
> OR
> C. Medically documented history of a chronic
> affective disorder of at least 2 years'
> duration. . . .

20 C.F.R. 404, Subpt. P, App. 1, § 12.04.

[3] Judge Margolis writes:

"Thus, ALJ Liberman's conclusion that '[m]any of the
requirements of Part A of [Listing 12.04] are absent,'
is not supported by substantial evidence in the record.
However, in order for plaintiff's 'severe' major
depression to met [sic.] or medically equal Listing §
12.04, in addition to satisfying § 12.04(A), plaintiff
must also satisfy § 12.04(B)."

Rec. Ruling at 31.

Plaintiff's Objections point in particular to the "social functioning" and "concentration" symptoms (2) and (3) under (B), asserting that "[b]oth Drs. Cohen and Fuess clearly stated that Mr. Jerry is at least markedly limited in dealing with the public" (Pl. Objections at 2) and that "[t]he Commissioner [] does not require that an individual be marked in every activity within the sections of Part B" (id.), citing to 20 C.F.R. 404, Subpt. P, App. 1, § 12.00(C), and additionally that "Mr. Jerry's GAF score during a period of time from 2003 through 2004 would have been at the level of 40 or 45 during the months when it was not reported in the record" (id. at 3).

However, given the elucidation of "marked" under section 12.00(C),[4] even if the observations of Drs. Cohen and Fuess that plaintiff is markedly limited in dealing with the public (id. at

_____

[4] The section reads:

C. Assessment of severity. We measure severity according to the functional limitations imposed by your medically determinable mental impairment(s). We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. . . .

20 C.F.R. 404, Subpt. P, App. 1, § 12.00(C).

2 (citing Tr. at 279)) could support a finding of markedly
limited social functioning under section 12.04(B)(2), the record
still does not support a finding of a requisite second limitation
under Part B.  The ALJ properly acknowledged that "[i]t was Dr.
Fuess' testimony that the claimant might have been at listing
level, including consideration of substance abuse, but only for a
short relevant period in October 2003" (Tr. at 19), but concluded
that viewing broadly the fluctuations in plaintiff's
psychological and physical condition over his many examinations
between 2003 and 2005 (id. at 18-20), the evidence did not
substantially support that plaintiff was per se disabled under
section 12.04.

Also, although plaintiff correctly argues that
substantiality cannot be found solely on "evidence from non-
treating, non-examining doctors who bear [sic] their opinions on
incomplete records" (Pl. Objections at 3, citing inter alia
Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996)), the ALJ only
partially relied on the reports of non-treating physicians
working for disability determination purposes, like Drs. Hanson
and Nelson, to reach his decision.  As Magistrate Judge Margolis
points out, the ALJ also relied on reports from treating Nurse
Fowler that corroborate the observations of Drs. Cohen and Fuess,
who evaluated plaintiff for disability determination purposes.
See Rec. Ruling at 33.  (See also Tr. at 20: "I conclude that Dr.

12

Fuess' evaluation is an accurate reflection of the record.  It is apparent from the VA records, including the report of nurse practitioner Ann Fowler, that the claimant has done very well when he takes his prescribed medications.")

Thus, even assuming that plaintiff did have the symptoms listed in Part A of section 12.04 (20 C.F.R. 404, Subpt. P, App. 1, § 12.04), because the evidence does not demonstrate that he suffered from two of the limitations listed in Part B, the Court adopts this part of the Magistrate Judge's ruling as properly concluding that the ALJ based his finding on substantial evidence.

## B. Plaintiff's Second Objection: Evaluation of the Treating Sources

Mr. Jerry faults the Magistrate Judge for selectively relying on particular sources, namely Dr. Cohen's report prepared for the purposes of disability determination, to the exclusion of reports by treating professionals like Nurse Fowler and Dr. D'Souza.  (See Pl. Objections at 4-5.)  Plaintiff cites to Ferraris v. Heckler, 728 F.2d 582, 587 (2d. Cir. 1984) to support his argument that an ALJ must not "'pick and choose' evidence in the record that supports his conclusions" (id. at 5).

Despite the fact that neither Nurse Fowler nor Dr. D'Souza was asked to complete a detailed statement for SSI purposes, there is little in the records produced by either that would detract from the substantial evidence supporting the finding that

13

plaintiff is not disabled.  The Fowler/D'Souza report, which
plaintiff believes the ALJ should have used in his decision,
documents that the patient's "mood is low to moderate level" and
"support system is limited," but also that his "judgment and
insight is good" and that he "is alert, oriented."  (Tr. at 114).
Another Fowler report not cited by the ALJ reads: "Mood is
described as 'low' per [patient] report, affect is reactive, mood
congruent.  Continues to report sleep disturbance, appetite is
'fair', reports weight loss, and energy level is low.  Thoughts
are organized and future-oriented."  (See id. at 153.)  Thus
reliance on these reports of treating professionals in the ALJ's
determination would not have altered the outcome, as they do not
contradict the evidence supporting his conclusion that plaintiff
is not disabled.

Plaintiff also objects to the ALJ's failure to obtain a
report from a treating source rating plaintiff's mental
limitation on the five-point scale (none, mild, moderate, marked,
and extreme) for purposes of assessing severity under the second
step of the disability determination in 20 C.F.R. §
404.1520a(c)(4), supra note 1, and disputes Magistrate Judge
Margolis's finding "that the ALJ need not request such an
evaluation from the treating sources because Dr. Cohen completed
one."  (See Pl. Objections at 5.)  However, "[t]reating
physicians' findings are not determinative and are given

14

'controlling weight' only if 'not inconsistent with the other substantial evidence. . . .'" <u>Feliciano v. Chater</u>, 1997 U.S. App. LEXIS 5550 (2d Cir. Mar. 24, 1997) (quoting 20 C.F.R. § 416.927(d)(2)); <u>see also</u> Rec. Ruling at 36.  In plaintiff's case, the observations of treating professionals like Nurse Fowler, who, <u>e.g.</u>, found plaintiff's mood "low to moderate" (Tr. at 114) and reported "that his level of coping and functioning ha[d] increased [due to] antidepressant [drugs]" (<u>id.</u> at 198), do not contradict the "mild" to "moderate" functional limitation degree ratings of Drs. Hanson and Cohen (<u>id.</u> at 108, 206-07).[5]  The ALJ therefore did not err in his decision.

### C. Plaintiff's Third Objection: Reliance on Vocational Expert Testimony

While the preceding objections go to the second and third steps of the disability determination process, plaintiff's third objection contests the fifth step, <u>i.e.</u>, the ALJ's decision, based on vocational expert Freedman's and Dr. Fuess's testimony, that plaintiff could work a job such as "assembler/fabricator" or "grinder/polisher" (Tr. at 23).  The ALJ, according to plaintiff, posed a "flawed hypothetical"[6] to Mr. Freedman at the January 31,

---

[5] Dr. Cohen rated plaintiff as having a "marked" limitation only with respect to "[i]nteract[ing] appropriate[ly] with the public."  See Tr. At 207.

[6] Judge Liberman posed this hypothetical to Mr. Freedman:

So, let's presume that Mr. Jerry at 50 plus, high school graduate, past work as a limousine driver,. . .

2005 supplemental hearing.  (See Pl. Objections at 6.)  Plaintiff
further argues that the ALJ did not consider the vocational
expert's response to the revised hypothetical posed by
plaintiff's counsel upon cross-examination, which he claims
illustrates that someone in plaintiff's position could not in
fact hold any kind of job.[7]

---

> has marked problems dealing with the public but could
> function with coworkers and can handle simple
> instructions, can make basic decisions, . . . can deal
> with changes . . . in a basic simple . . . work
> setting, and can handle — essentially handle simple
> repetitive work.  Let's assume that he's limited to
> light and sedentary jobs.  Would there be any work he
> could do in the national economy with that [residual
> functional capacity]?

(Tr. at 287-88.)

    [7] The colloquy between plaintiff's counsel and Mr. Freedman
is as follows:

> Q.  Mr. Freedman, if you work with the judge's
> hypothetical but add to that hypothetical absence from
> work for, say, three or four days per month, over a 12
> month period, would that hypothetical worker be able to
> hold the jobs you've just identified?
>
> A.  Generally with that much absenteeism I would say —
> well, it's not a functional question.  It is a
> employment continuation and, and that would be a
> problem. . . .
> . . . .
> Q.  If . . . on a [sic] episodic basis the hypothetical
> worker described by the judge . . . had a marked
> limitation in ability to concentrate and pay attention
> to the work one day a week, would . . . the
> hypothetical worker be able to perform the jobs you've
> identified?
>
> A.  Well, they might be able to perform them.  I think
> that their productivity would be significantly

16

The Magistrate Judge cites <u>Dumas v. Schweiker</u>, 712 F.2d
1545, 1554 (2d Cir. 1983) (criticizing hypotheticals posed by
ALJs "that ask a vocational expert to assume a particular
physical capability on the part of the claimant [in] situations
where there was no evidence to support the assumption underlying
the hypothetical") and references relevant passages from the
hearing transcript which she concludes demonstrate that the ALJ
had substantial evidence from which to devise his hypothetical.
<u>See</u> Rec. Ruling at 40-41.  Other passages from plaintiff's
medical record further support the correspondence between the
ALJ's hypothetical and plaintiff's functional capabilities: "Able
to follow simple directions, concentrate, keep regular schedule,
and work near others" (Tr. at 94); and "able to slow-up to task
completion that beneficial for pts future success" [sic] (Tr. at
115).

The revised hypothetical posed by plaintiff's counsel
focuses on plaintiff's claimed inability to work consistently and
to concentrate, <u>see</u> <u>supra</u> note 6.  Vocational expert Freedman
responds indirectly, distinguishing the question of residual
functional capacity from that of "employment continuation," <u>see</u>
<u>id.</u>  However, even assuming that absenteeism of the magnitude

---

diminished.  And again we're into employment practices.
. . .

(Tr. at 290-91.)

proposed by plaintiff's counsel would preclude employment of any kind, plaintiff only cites (see Pl. Mot. at 23) to sections in the record showing that he had sleeping problems between September to November 2003 (Tr. at 113, 153, 166, 172) and that the sleeping drugs prescribed then caused plaintiff to sleep "up until '11 or 12 noon'" (id. at 213; see also id. at 242) to support his hypothetical.  However, plaintiff represented that his tendency to sleep "maybe [sic] related to lack of structure" (id. at 242) — suggesting the kind of temporal structure a regular job affords.  These references to sleeping problems, when weighed against the conclusions drawn by both treating and non-treating medical personnel that plaintiff was improving and capable of daily functioning, do not affect the Court's conclusion that the ALJ's hypothetical was based on substantial evidence and that his reliance on the vocational expert's responsive testimony was therefore proper.

### D. Plaintiff's Fourth Objection: Evaluation of Plaintiff's Credibility

Plaintiff reiterates the argument in his Motion (see Pl. Objections at 6-7; Pl. Mem. [Doc. #16] at 23-24), that the ALJ concluded without a stated basis that plaintiff was not credible, and argues that, although the Magistrate Judge gave reasons to question plaintiff's credibility, these reasons were not in the ALJ's findings and cannot therefore support the Recommended Ruling.  (Pl. Objections at 6-7.)  In the Second Circuit, "[a]

18

finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record. . . . [and the] ALJ must assess subjective evidence in light of objective medical facts and diagnoses." Williams, 859 F.2d at 260-261.  However, "[i]t is the function of the Secretary, not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted).

Upon review, the Court finds that the ALJ gave a reviewable, and supportable, basis for his conclusion that "the claimant's allegations regarding his limitations are not totally credible" (Tr. at 22).  In his opinion, the ALJ states, after summarizing plaintiff's personal and medical history, "The claimant's subjective complaints cannot be fully credited in light of the medical evidence showing substantial improvement while under treatment and while taking medication and in light of the claimant's past record of incarceration."  (Tr. at 20).  This statement, while pithy, sets out two reasons for the ALJ's doubt: the discrepancy between plaintiff's claimed symptoms and the medical record, and plaintiff's criminal record as negatively impacting plaintiff's credibility generally.  See, e.g., Williams v. Comm'r of Soc. Sec., 423 F. Supp. 2d 77, 84 (W.D.N.Y. 2006) (approving the ALJ's credibility determination based on the fact

19

"that plaintiff testified that she had engaged in assaultive conduct and possibly criminal behavior in the past. . . and that there were significant inconsistencies in her testimony").

Even bracketing the additional concerns raised by the Magistrate Judge as to plaintiff's credibility, see Rec. Ruling at 42-43, the ALJ's opinion refers to Mr. Jerry's "long history of incarceration for burglary in the 1980s into the early 1990s and again from 1999 to May 2003" (Tr. at 17 n.1).  While plaintiff related specifics of his criminal history to a number of nurses and other VA staff over a period of years (see id. at 132, 143, 146, 160-61, 171), he claimed not to remember the details of his arrests and convictions while testifying at the supplemental hearing before Judge Liberman (id. at 253-54).  In addition, plaintiff averred at the hearing that he sometimes has suicidal ideation (id. at 260), which he consistently denied in VA visits (see id. at 135, 148, 153, 162, 167, 172).  While these contradictions may be explained by factors such as plaintiff's nervousness during the hearing, the ALJ's conclusion that plaintiff's rendition of complaints could not be fully credited was nonetheless supported by substantial evidence in the record.

## IV.  CONCLUSION

Accordingly, the Recommended Ruling on Plaintiff's Motion for Judgment on the Pleadings and on Defendant's Motion to Affirm the Decision of the Commissioner [Doc. #20] is ADOPTED pursuant to Fed. R. Civ. P. 72(b) and Local R. 72.2(b).


IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 28th day of September, 2006.**

21